Good morning, Your Honor. Anthony Bornstein, Federal Defender's Office, on behalf of the Appellant Sean Newcomb. Your Honors, on the issue of preservation, I feel my briefing may have perhaps excessively confused the matter and or complicated it, and I'd like to try and present a simplified version this morning in my opening statement. It is, of course, settled habeas doctrine that State courts are the ultimate expositors of State law. We know from Majeski v. Board of Parole, case cited at page 11 of our reply brief, that the Oregon appellate courts have full appellate authority to consider defects in the revocation should those defects – I'm sorry – should those defects infect the ultimate sanction that is imposed. That is what Sean Newcomb challenged in this case, and that's what he fairly presented to the Oregon Court of Appeals. He sought judicial review from the future disposition hearing based on the constitutional due process error that infected the disposition. The State did not oppose that motion, even though it could have filed a motion for summary affirmance, which it did not. It did not even offer a qualified objection. There was full briefing, which followed in which the due process issue was presented, and the State explicitly responded to the merits and offered an alternative argument on preservation. Kennedy. Why don't you come right to the point? There are people sitting in the audience. They don't have the vaguest idea what you're talking about. So tell them what this case is about. It's interesting. Okay. The case is about an Oregon parolee who, after 20 years of prison, is ultimately ordered by the Oregon Court of Appeals to be released and is then placed on parole on a number of conditions. Because of the facts and circumstances surrounding the original crime in 1984. Well, he was convicted of murder. Right. And who did he kill the first time? A woman. A woman? An acquaintance, yes. A girlfriend. Yes. It's unclear exactly what the relationship was, but acquaintance. Yes. So he's placed on parole under a special condition number 10, which requires him to report a dating relationship to the probation to the parole officer. Not long after he's released, a violation warrant is issued, and he's has a revocation hearing based on the alleged violation of the single condition of parole, that he engaged in a dating relationship without notifying his parole officer. He's found in violation of that, and in spite of a recommendation for a five-year sanction to, in effect, teach him a lesson, the Oregon Board of Parole throws away the key. They say, no, instead of a five-year recommendation, you're going away for the rest of your natural life based on this single violation of a technical condition that has a constitutionally vague feature. Well, I guess you can characterize it a different way, too, and I think that's a good way, as an advocate, to characterize it on behalf of your client. But I think it also can be characterized that here's a man convicted of murder for murdering a woman. He met at a bar and came back to his apartment, apparently. I think that's what it was, but anyhow, she was murdered. He is on parole. He's supposed to disclose the dating relationship to his parole officer. He meets this other woman, who he, they go to dinner, they've gone shopping, they have had sexual relations. And he does not disclose that to his parole officer. So the parole officer finds out about it, and he seeks to revoke him, correct? Yes. And then he gets notified that they're going to revoke him. He doesn't appeal the administrative notification. They notify him that he's going to have a future hearing regarding his disposition. The parole board says, well, I think, basically, it can be characterized, you know, you had your chance because you murdered someone previously. We gave you some conditions here, and it seems like out of an abundance of caution, you should have notified your parole officer that you were seeing somebody. He didn't. So now he is looking, and I, let me just say, I think that's probably a difficult question to define what a dating relationship is. But here, he didn't appeal the notification that he had been revoked within the 45 days that had been allotted. And so I'd like to find out from you, your best argument on why that isn't just basically barred at this point. I'm sorry. I didn't mean to interrupt. That's my question. I think the best way of looking at this is to analogize it to a death penalty case or even a noncapital case where the death penalty or the sentencing enhancement is based exclusively on the violation that, in that setting, would have led to the capital conviction or the underlying conviction. If the case then reaches the penalty phase or the sentencing enhancement phase, and a timely objection is made to the sentencing enhancement that, again, was, if you look backwards, was attributable to the error that led to the conviction, no court is going to uphold a death penalty if there is a timely challenge to the sentencing enhancement, to the death penalty. You're not bringing an Eighth Amendment claim at this point. Oh, no, it's not an Eighth Amendment, but it's an Eighth Amendment. Earlier there was one. This really goes to the revocation. And I have the same question Judge McGeer has. The argument you're making goes to the first proceeding, and there was written notice that as to that proceeding, the decision of whether to revoke or not revoke, quite apart from sanction, there was a 45-day deadline to appeal. Well, it's the parole board that is the only State entity that is saying your claim to challenge the violation on due process grounds is barred. That's the board. That is not the court. Well, do you have any authority that suggests that he could raise an objection to the revocation at the future disposition hearing before the parole board? Majeski. In the Majeski v. Board of Parole, which is discussed at pages 11 and 12 of our reply brief, in which the court of appeals sustained a challenge to the underlying revocation and the error that infected the underlying revocation, because that had a significant influence on the sanction that was imposed, just like in this case, at the future disposition hearing. And the case was decided in 2001, and there's no discussion of it in the State court briefing. It didn't violate the terms of his parole, did it not? Even if the condition, the single condition is determined to be a valid violation, he can still challenge the sanctions. So you concede that, that he violated a condition of his parole? I would only concede that he violated perhaps an unconstitutional condition. The question of why is it unconstitutional? Because it lacks sufficient clarity as required by. Have you looked up the definition of dating? Have you looked it up? My answer to that is this, Your Honor. Well, you can answer that yes or no. It needs sufficient clarity and a definition which was not provided to you. If you look at the definition of dating, it has. All you've got to do is look in your little telephone. They give you dictionaries. It's got a romantic element, you see. You know, dating. And I think if you. That's what dating means. That's what he was doing. And he killed a woman that he'd been dating in the past. So that's why the parole officer said, if you're going to date someone, if you're going to have a dating relationship, we want to know about it. I understand why the courts wanted this. Why the board. If it happens once, it could happen twice. Why do you think they put that in there? I have no doubt that they had reasons and that they felt it was necessary as a condition. And that only takes you so far because then you have to determine whether the condition, like other parole conditions, have constitutional validity. It was more than one woman that he was dating. And significantly, the court did not find, I'm sorry, the board did not find that he had a dating relationship with the others. It just chose one out of the three to find a violation of. There were two other women that he had some level of acquaintanceship with, and he was not found in violation of them. They didn't need to find it more than one way. I'm sorry? They didn't need to find it more than one way. I'm trying to underscore the lack of clarity, Your Honor. And I would point out that we've got courts around the country, just a few, that have addressed either similar or nearly identical conditions. And there are other courts around the country. And so I think the merits claims, you know, a little bit more interesting. But does the record give any indication that Oregon courts have actually considered the merits of the claim? Yes, definitely. He was a he had a valid appeal from the future disposition hearing with the constitutional question presented as a significant issue in his petition for review. And then in the full merits briefing, the State responded alternatively to the merits saying that it was a constitutionally precise and non-vague condition. So the merits are presented to the court of appeals, and then there is a silent affirmance. Well, that's I guess my question. Because there's a silent affirmance, I mean, it's basically summarily affirmed, correct? Correct. So what do we look to to see if this is decided? Is it fair to look to, I mean, normally you look to one of the last court that has made a decision on this. But here, because it was summarily affirmed, do we look to Harrington v. Richter to help us on this? And Harrington in turn approvingly cites Harris v. Reed, which says you need a plain statement. But from the parole board then, do we look at the parole board statement or whose statement? Or just? No. You look, you, respectfully, Your Honor, you would look at the court of appeals decision to determine if there's a plain statement in light of this procedural history. And Nitschke, this Court's decision, Nitschke v. Bilek, which came out after the district court ruled and found a procedural default, says that in a posture similar to this, if there's expressed language relying on a State procedural basis, the court, the Federal court upon review can find a default. Well, how do we know if they relied on the merits or the procedure here? We could, one, in light of the lack of clarity, you don't, and that's the basis for the plain statement rule, which this Court reinforced in Nitschke. And who has this burden of proof on what is the standard? The State. And I think Nitschke is very clear on that. Quoted Nitschke in both the opening and reply briefs. And there are two points in Nitschke where this Court expressly requires in a setting such as this that there be an expressed statement, as there was in the Nitschke State appeal, of a reliance on the State procedural default. I see my time is up, Your Honor. Thank you. May it please the Court? Did you look up the definition of dating? Excuse me, Your Honor? Did you look up the definition of dating? It's in Petitioner's reply brief, Your Honor. That's the definition that Petitioner relies on. May it please the Court, Carolyn Alexander, for Respondent Jeff Primo. Procedural default is dispositive in this case, and I think there's some confusion about how these procedural rules work in Oregon on this particular issue. So I'd like to address that and try to straighten out the confusion. As the Court understands, a Petitioner who has had parole revoked is a person who has had parole revoked challenges either – well, back up. In parole board law, parole board issues an order of supervision conditions. That is an appealable order. So any condition that the Petitioner or his lawyer feel are unconstitutional or are vague or for any other reason inapplicable can appeal in a judicial review proceeding that order of supervision conditions. Petitioner could have done that here. He had noticed that he had the right of appeal. On revocation, he can appeal the revocation order. He must exhaust administrative remedies, which the Oregon legislature has indicated, 144, 335. But barring that, he's got absolute right to judicial review on that order of revocation. Following the order of revocation, the board has a future disposition hearing and issues the disposition or sanction order. Under ORS 144, 335, only the sanction can be challenged at that time, because a Petitioner must be adversely affected or aggrieved by the order in question. That rule is jurisdictional. We're not talking about preservation in NHTSA. These are two completely separate procedural rules. It's not a preservation issue where there's an exception like plain error that the court of appeals or the Supreme Court could reach if they decided under certain circumstances they could. This is a jurisdictional rule. Majeski does not stand for the proposition that the Oregon court of appeals rejects or ignores that procedural rule. Majeski was very different circumstances. What happened in that case was the board actually relied on a basis for revocation that the hearings officer did not find. So under that particular circumstance, the board allowed an untimely challenge to the revocation order. So in other words, the board waived its timeliness rule in that case. So the court of appeals wasn't deprived of jurisdiction under 144-335. Do we need to be certain that the Oregon courts relied on a procedural bar? I think, Your Honor, that when it's jurisdictional like this, I think that it's a given. And to address your question, Judge Mergia, we do use Yeltsed to look through to the last reason decision. That is the board's decision applying the procedural bar. This Court has a history of cases and case law addressing administrative decisions in the AEDPA context. And so when an administrative body relies on a procedural bar, that should be no different than if a State court relies on a procedural bar. We're still going to look back to that last reason decision applying the procedural bar, and we're not going to assume that a reviewing court disregards that for no reason, especially in a case like this where it's jurisdictional. One thing that I'd like to make clear as well is on the motion. Yes, Your Honor. I'm just curious, because I appreciate the argument on the procedural. Let's just hypothetical. We disagree with you and we go to the merits. Yes, Your Honor. What's your position on the merits? I think you have to have a tougher time. I mean, isn't dating relationship sort of vague, and there's other courts out there that have kind of weighed in on that already? In fact, the board used the term differently, right? At one point, they talked about dating relationship. At one point, they talked about sexual relationship. Isn't that problematic? I don't think that's problematic under these facts, Your Honor. Because to answer your question, Judge Mergia, if in fact the Oregon Court of Appeals reached this issue, its decision rejecting the issue is entitled to deference, even though that decision is silent. We know that under Harrington v. Richter and other case law from the U.S. Supreme Court. So the Court's decision only need be reasonable under controlling U.S. Supreme Court law. There is no U.S. Supreme Court law that says a parole condition using the word dating or the term dating relationship is unconstitutionally vague. We know that. But what the U.S. Supreme Court does say is that the Petitioner has to have fair warning that his conduct is at risk. The Supreme Court has also said that even when First Amendment rights are implicated, which they are not here and Petitioner doesn't argue otherwise, we don't need precise guidance or perfect clarity. The circuits, and in my 28J letter, I've indicated those cases that have followed that rule of law, we don't have to define words of common understanding. And, Judge Pregerson, I think you picked up on that. It's a term of common understanding. But even if that's debatable, in a vagueness challenge, a due process vagueness challenge where First Amendment rights are not implicated, it's an as-applied challenge. So let's look at the facts in this case. He didn't raise any kind of challenge to this condition until after the revocation hearing. What he said at the revocation hearing based on the hearing officer's findings is, I didn't engage in that conduct. She's just a friend. We didn't go out anywhere. I went to buy shoes with her once, that was all. We didn't have a sexual relationship. None of that happened. Not, I didn't understand what it meant. And the evidence at that hearing showed that this particular woman freely told the defendant that she was going to have a date. We have a dating relationship. We go window shopping. We go to dinner. We have consensual sex. So under the facts of this case, it's clear the Petitioner had absolute notice of his duty to report. The record also shows he didn't do that because he thought it was none of his parole officer's business. And there's also indication in the record that he was angry about the condition. So under these facts, no, I don't think it's unconstitutionally bad, Your Honor. I think that answers your question. That's the precedent that we apply. One additional point I wanted to make about the procedural default issue, and that is in the motion for leave to proceed, he raised a completely different argument. That's what the court of appeals gave him leave to proceed on, not the claim that's in front of this Court now and not the claim that he eventually briefed in the court of appeals. So had he raised the claim in the motion for leave to proceed, the State very well would have opposed that, saying the court has no jurisdiction. But the claim he raised was not a jurisdictional – there was no jurisdictional bar to that claim. So the claim didn't become clear until it was before the Oregon court of appeals. So there's no reason to believe that the Oregon court of appeals disregarded the procedural bar, the mandate of ORS 144-335, and the timeliness bar that the board of parole imposed. Any other questions? Thank you so much. First, Your Honor, it is absolutely incorrect to say there was a jurisdictional bar. There's not a word in the appellate brief, in the Respondent's brief in the court of appeals, that says there's a jurisdictional bar, and in the court below, that is, in the district court in this very case, the Respondent took the position that under a plain error standard, which we don't think is necessary here, but the Respondent's position in the district court was that plain error review could be had in this very case, and that shows there is no jurisdictional bar. So I believe that the Respondent's position here is just completely incorrect. There were administrative remedies, state remedies that your client could have pursued. And what he pursued was a challenge. That's right. He had an administrative remedy, which was the administrative review phase after the holding of the future disposition hearing by the Oregon board of parole. He undertook that, raising the due process claim in that proceeding, and then raised the due process argument in the appellate phase that stemmed from that administrative process, Your Honor. Counsel, is there anything that prevented him from raising it after the revocation hearing? He filed a letter after the hearing and before the decision, raising this argument, raising this concern, as opposed to the argument that he made at the hearing, which is that these events never happened. Is there anything that prevented him from proceeding then? Was there anything preventing him from? I don't think there was anything that prevented him from proceeding then, but I have two replies to the Court's question. One, I would again fall back on my analogy to a death penalty case where, while there may have been, unfortunately, a forfeited challenge to the underlying conviction, if the basis for the conviction was the basis for the death sentence, a timely challenge to the death sentence at the penalty phase would preserve the issue, and that's what we have here. And I would underscore how analogous that situation is by referencing page 67 in volume 2 of the ER, which is the parole board's opinion, if you will, and in that, in the board action form number 20, the board determined the length of your sanction in light of the violation of your conditions of parole. And therefore, since there was a single violation here, the Court has to reach the constitutional question, and just like the court of appeals did, whether that condition can pass constitutional muster. Thank you very much. And this is the matter and stands submitted.
judges: Pregerson, Murguia, Christen